IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTIN KILCREASE                                                    **PLAINTIFF**

v.                                          CIVIL ACTION NO. 1:20-CV-00131-GHD-DAS

CITY OF TUPELO, MISSISSIPPI;
BRITTENY WILLIAMS, individually and in her official capacity; and
JOHN/JANE DOES, individually and their official capacities          **DEFENDANTS**

## OPINION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Presently before the Court is the Motion for Summary Judgment filed by the City of

Tupelo, Mississippi and Britteny Williams, individually and in her official capacity as a law

enforcement officer (collectively "the Defendants") [19], in response to Plaintiff Christin

Kilcrease's Complaint alleging violations of the Fourth, Fifth, and Fourteenth Amendments of

the United States Constitution, as well as violations of 42 U.S.C. § 1983 and Mississippi state

common law [1, at 1]. For the reasons stated herein, the Defendants' Motion shall be denied.

I.      **Factual Background and Procedural History**

        A. **Factual Background**

The Plaintiff is a resident of Baltimore, Maryland [*Id.*, at 2]. Defendant City of Tupelo,

Mississippi, is a municipal corporation located in the state of Mississippi that operates the

Tupelo Police Department [*Id.*]. Defendant Britteny Williams is a law enforcement officer who

was employed by the Tupelo Police Department on or about June 23, 2017 [*Id.*]. Defendants

John/Jane Does are unknown individuals who were also employed by the Tupelo Police

Department as law enforcement officers at that time [*Id.*].

The facts of the case, as presented by the Plaintiff in her Complaint, are the following. On

June 23, 2017, the Plaintiff was working at the IMA-Tupelo North Mississippi Medical Clinic

located in Tupelo, Mississippi [*Id.*, at 3]. At or around 3:00 p.m., the Plaintiff received a call from one of the nurses, who informed her that they had heard gunshots and were in the back of the office with the door locked [*Id.*]. The Plaintiff went to her office, turned off the lights, and called her supervisor, who instructed her to hide underneath her desk [*Id.*]. The Plaintiff contacted her mother, Marilove Kilcrease ("Marilove"), who was in Nashville, Tennessee [*Id.*]. Marilove contacted Palacia Knox, a friend living in Memphis, Tennessee, who in turn contacted the Tupelo Police Department to determine the status of the situation at the clinic [*Id.*]. Ms. Knox was then transferred to the 911 dispatcher [*Id.*]. The dispatcher told Ms. Knox that the Plaintiff should hide under her desk until the police retrieved her by knocking five times [*Id.*, at 3-4]. Ms. Knox relayed this message back to Marilove, who in turn relayed it to the Plaintiff [*Id.*]. After the Plaintiff was subsequently informed that police officers were at her door, the Plaintiff exited from under her desk, moved chairs that had been in front of the door, and began to reach for the door handle [*Id.*, at 4]. It was at this point that police officers entered the room with guns drawn, and yelled at the Plaintiff to put her hands up [*Id.*]. The Plaintiff dropped her phone immediately and placed her hands up [*Id.*]. The officers "grabbed her out of the office and slung her against the wall" and then "forced [her] to walk through the lobby bare-footed to the police car" [*Id.*]. The Plaintiff was arrested and taken to the Tupelo Police Department [*Id.*].

Prior to the arrival of the officers at the scene, Defendant Williams cleared the call and reported it to Dispatch [*Id.*]. At the time of the officers' interaction with the Plaintiff, there was no crime being committed or suspected of being committed as documented by the dispatcher [*Id.*]. On June 24, 2017, one day after the incident, Defendant Williams swore out two affidavits [*Id.*]. In the first affidavit, Defendant Williams swore that the Plaintiff "unlawfully and willfully made a telephone call/calls to an emergency telephone service and knowingly or intentionally

2

falsely reported a crime, reported shots fired inside IMA on S. Madison" [*Id.*]. In the second affidavit, Defendant Williams swore that the Plaintiff "unlawfully and willfully refused or failed to comply with the request or command or order" of Defendant Williams, "a law enforcement officer who had the authority to then and there arrest any person for violation of the law, with intent to provoke a breach of the peace or under such circumstances that a breach of the peace could have occurred or resulted by refusal to obey said officer in violation of section 97-35-7(1) by [the Plaintiff] refused [sic] to come out of the office and show her hands after being given multiple loud commands to do so for our safety" [*Id.*, at 4-5].

On October 19, 2019, the Tupelo Municipal Court of Mississippi dismissed after trial the charge of False Reporting to 911 [*Id.*, at 5; 1-1]. The Tupelo Municipal Court's findings in this matter were based on the testimony of the dispatcher, who stated that Defendant Williams did not contact the dispatcher or review the records to determine whether the Plaintiff had in fact made a 911 call [1, at 5]. Video recording of Defendant Williams revealed during the trial that the Plaintiff emerged from her office with her hands up [*Id.*]. The municipal court found that the Plaintiff was guilty of Disorderly Conduct-Failure to Comply, pursuant to § 97-35-7 of the Mississippi Code Annotated [1-1]. The Plaintiff has appealed this finding, and the case was sent to the Lee County Court for a trial *de novo* [1, at 5].

### B. Procedural History

In her Complaint before this Court, the Plaintiff alleges five causes of action: Count 1 – 42 U.S.C. § 1983 Fourth Amendment Violation for False Arrest and Malicious Criminal Prosecution (Against Defendant Williams); Count 2 – 42 U.S.C. § 1983 Fourth Amendment Violation for False Arrest (Against Defendants Does in Conspiracy with Defendant Williams); Count 3 – 42 U.S.C. § 1983 Due Process Violation (Against All Defendants); Count 4 – Failure

to Intervene (Against All Defendants); and Count 5 – Respondeat Superior (Against Defendant City of Tupelo) [1, at 5-10]. The Complaint was filed on June 23, 2020.

On September 26, 2020, the Plaintiff filed a Motion for Extension of Time to Serve Process [5]. On October 1, 2020, the Court issued an Order granting the Plaintiff's Motion for Extension of Time [6] in which it found that the Plaintiff had shown good cause for her failure to serve the Defendants within the appropriate timeframe established in Rule 4(m) of the Federal Rules of Civil Procedure [*Id.*, at ¶ 7]. On this same day, the Plaintiff served the Defendants [12; 13].

On October 19, 2020, Defendants Williams and City of Tupelo filed a Motion to Dismiss [7]. In this Motion, the Defendants argued that Rules 4(m), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure dictated the dismissal of the case against them because they were not served within 90 days of the filing of the Complaint [*Id.*, at ¶¶ 2-3].

On November 12, 2020, the Plaintiff filed her Response to the Defendants' Motion to Dismiss [14]. In her response, the Plaintiff stated that summonses were issued for Defendants Williams and City of Tupelo on June 24, 2020 [*Id.*, at ¶ 1]. She further stated that the City Prosecutor told the Plaintiff's attorney that Defendant City of Tupelo was willing to negotiate a settlement resolving this civil suit as well as the appeal of the misdemeanor charge pending in state court [*Id.*, at ¶ 3]. Several days after communicating with Defendant City of Tupelo regarding a potential settlement, the Plaintiff's attorney discovered that the time for service under Rule 4(m) had been changed from 120 days to 90 days [*Id.*]. The Plaintiff's attorney failed to appropriately serve process because of this honest mistake and a similar mistake in which the Plaintiff's attorney confused the date of filing of the complaint with the date of his entry of appearance in the case of the appeal of the misdemeanor charge pending in state court [*Id.*].

Once the Plaintiff's attorney realized this mistake, he filed a Motion for Additional Time to Serve Process on September 26, 2020, five days after the expiration of the 90-day period stated in Rule 4(m) [*Id.*, at ¶ 6; 5]. As noted above, the Court granted this Motion, and the Plaintiff served the Defendants on that same day.

On November 19, 2020, the Defendants filed a Notice of Withdrawal of their Motion to Dismiss [16]. The Defendants conceded that "based on the argument and authorities set out therein by the Plaintiff the Defendants are of the opinion that their Motion to Dismiss is not well taken," and thus withdrew their Motion to Dismiss [*Id.*]. Also on November 19, 2020, the Defendants filed their Answer and Defenses [17].

On January 4, 2021, the Defendants filed their Motion for Summary Judgment [19]. In it, the Defendants noted that the facts of the case are undisputed, and that their Motion only relates to a question of law [19, at 1]. The Defendants' argument consists of the following points:

1. It is undisputed that the Plaintiff filed her Complaint on June 23, 2020;

2. All claims brought in the Complaint arise out of an incident that occurred on June 23, 2017;

3. All claims brought in the Complaint fall under Mississippi's general rule regarding the statute of limitations, which establishes a three-year limit for bringing forward a claim;

4. Ergo, in light of Points 1 through 3, the Plaintiff filed her Complaint on the last day in which it would have been legally possible to file her Complaint within the three-year statute of limitations;

5. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, a plaintiff has 90 days to serve process;

5

6. Rule 4(m) tolls the three-year statute of limitation for that 90-day period.

7. The Plaintiff filed a Motion for Time to Serve Process on the Defendants five days after the expiration of the 90-day period;

8. After the expiration of the 90-day period, the three-year statute of limitations began to run again, and then subsequently expired, as the full three years had passed plus the 90-day tolling period;

9. Therefore, the three-year statute of limitations expired before the Plaintiff filed her Motion for Time to Serve Process on the Defendants;

10. Because the statute of limitations expired prior to the filing of the Plaintiff's Motion for Time, all of the claims in the Plaintiff's Complaint are barred by the statute of limitations [20].

The Defendants argue that, because of these points, the Court should grant their Motion for Summary Judgment and dismiss this case with prejudice [19]. The Plaintiff filed her Response in Opposition to the Defendants' Motion for Summary Judgment on February 8, 2021 [26]. The Defendants filed their Reply Brief in Support of their Motion for Summary Judgment on February 19, 2021 [30]. The matter is now ready for review.

## II.    Legal Standards

### A.  Summary Judgment

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary

judgment." *Ragas*, 136 F.3d at 458.   That said, summary judgment "must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

## B. Statute of Limitations and Rule 4(m) of the Federal Rules of Civil Procedure

"Under the civil rules, numerous cases have held that, for limitations purposes, a civil action is deemed to commence upon the filing of a complaint." *Windbrooke Development Corp. v. Environmental Enterprises, Inc. of Florida*, 524 F.2d 461, 463 (5th Cir. 1975). "[T]he Supreme Court [has] held that § 1983 actions are best characterized as personal injury actions and, as such, should be subject to state statutes of limitations for general personal injury actions." *Walker v. Epps*, 550 F.3d 407, 411 (5th Cir. 2008). "Just as we borrow the forum state's statute of limitations for § 1983 purposes, we borrow also the state's tolling principles." *Id.* at 415.

The general statute of limitations in Mississippi is three years. MISS. CODE ANN. § 15-1-49. Filing a complaint will toll the statute of limitations, but if service is not effectuated within the appropriate timeframe, then the statute begins to run again. *Triple "C" Transport, Inc. v. Dickens*, 870 So. 2d 1195, 1199–200 (Miss. 2004). In such a situation, "to further toll the statute of limitations, the plaintiff must then refile the complaint before the statute of limitations ends, or show good cause for failing to serve process on the defendant [within the appropriate timeframe]; otherwise, dismissal is proper." *Id.*, at 1200; *see also Jeffreys v. West*, 2009 WL 212139 (N.D. Miss. 2009).

Rule 4(m) of Federal Rules of Civil Procedure states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, the rule continues, "if the plaintiff

shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Additionally, even if the plaintiff lacks good cause, the court has the discretionary authority to extend the time for service. *Millan v. USAA General Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008) (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)). Rule 4(m) is not jurisdictional. *Henderson v. U.S.*, 517 U.S. 654, 669-70 (1996) ("We see no reason why the prescription governing time for service is not, as is the whole of Rule 4, a nonjurisdictional rule governing 'practice and procedure' in federal cases."). "Service of process... is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind, or against a particular individual," and its "essential purpose is auxiliary, a purpose distinct from the substantive matters" of a case. *Id.* at 671.

An extension of time for service is warranted "if the applicable statute of limitations would bar the refiled action." *Millan*, 546 F.3d at 325 (citing Fed. R. Civ. P. 4(m) advisory committee's note (1993)). Where the applicable statute of limitations would likely result in a bar on future litigation, a district court should evaluate a party's arguments of dismissal by using the same heightened standard used to review a dismissal with prejudice. *Id.* at 326. Since dismissal with prejudice is "an extreme sanction that deprives a litigant of the opportunity to pursue his claim," *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980), the Court of Appeals for the Fifth Circuit has limited district courts' discretion to dismiss claims with prejudice. *Millan*, 546 at 326.

Thus, a dismissal with prejudice is "warranted only where 'a clear record of delay or contumacious conduct by the plaintiff' exists and a 'lesser sanction would not better serve the interests of justice.'" *Gray v. Fidelity Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir.1981) (quoting *Durham v. Fla. East Coast Railway Co.*, 385 F.2d 366, 368 (5th Cir.1967), and *Brown v.*

9

*Thompson*, 430 F.2d 1214, 1216 (5th Cir.1970)) (citations removed).  Moreover, in cases in which

the Court of Appeals for the Fifth Circuit has affirmed district courts' dismissals with prejudice, it

has generally found at least one of three aggravating factors: "(1) delay caused by [the] plaintiff

himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by

intentional conduct."  *Millan*, 546 at 326 (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th

Cir. 1986).  This heightened standard should be applied in cases in which a party seeks dismissal

of claims due to a delay between filing and service and characterizes this delay as a failure to serve

the defendant in a timely or proper manner, rather than a failure to prosecute.  *Id.*  Moreover, any

delay that warrants dismissal with prejudice must be longer than just a few months, and "must be

characterized by 'significant periods of total inactivity'" or "'egregious and sometimes outrageous

delays.'"  *Id.* at 326-27 (quoting *McNeal v. Papasan*, 842 F.2d 787, 791 (5th Cir. 1988) and *Rogers*

*v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)).

### C.  Rules 12(b)(4-5) of the Federal Rules of Civil Procedure

These rules pertain to insufficient process and insufficient service of process.  Fed. R. Civ.

Pro. 12(b)(4-5).  They are waived by "(A) omitting it from a motion in the circumstances described

in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in

a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."  Fed.

R. Civ. Pro. 12(h)(1).

### III.  Analysis

The weight of the case law and the plain language of the Rule 4(m) indicate that the statute

of limitations does not automatically lapse after the allotted period stated in the Rule, which is

currently set at 90 days.  Rather, as the above-cited cases and the language of the Rule make clear,

judges have discretion to grant additional time, either through an extension or through an "order

that service be made within a specified time." Fed. R. Civ. P. 4(m). This indicates that there is an allowable leeway for service of process. Additionally, as noted above, the case law indicates that, beyond the Rule's timeframe, there is leeway for a plaintiff to show good cause as to their failure to serve process properly and subsequently rectify the situation. Thus, the lapsing of the time granted by the Rule does not automatically and instantaneously render a complaint barred by the applicable statute of limitations, as the Defendants argue. The cases that the Defendants cite to support this notion refer to delays involving weeks, months, and sometimes well over a year, rather than the five-day delay in the case *sub judice*. Moreover, as indicated above, when such an outcome would essentially result in a dismissal with prejudice, districts courts should evaluate the case under a heightened standard, which only allows for dismissal in cases of extreme or egregious delay. The five-day delay in this case simply does not meet this standard, particularly when coupled with the fact that the Court found good cause for failing to serve process within 90 days of its filing [6]. Likewise, this case presents none of the aggravating factors cited in *Millan*. Thus, since this case lacks all of these aggravating factors, the delay in this case was not extreme, and the Court found good cause for this delay, the facts and law militate against granting the Defendants' Motion for Summary Judgment.

The Court also notes that the Defendants' argument regarding the statute of limitations appears to be a rehashing of the Defendants' Rule 12 argument that they made in their Motion to Dismiss [7]—which has since been withdrawn [16]—rather than an appropriate argument for a summary judgment motion. Indeed, the cases that the Defendants cite in the matter *sub judice* all relate to motions to dismiss rather than motions for summary judgment. Since the Defendants appear to have made fundamentally the same argument with their Motion to Dismiss and said Motion was withdrawn, it would appear that the Defendants have waived this argument and cannot

relitigate it now. However, even if this were not so, the Defendants' Motion for Summary Judgment still fails, as discussed above.

**IV.** **Conclusion**

For the reasons stated above, the Court finds that the Defendants' Motion for Summary Judgment falls short of the heightened standard required by this case. Therefore, the Court finds that the Defendants' Motion for Summary Judgment is denied.

An order in accordance with this opinion shall issue this day.

THIS, the 24th day of August, 2021.

SENIOR U.S. DISTRICT JUDGE